**WICHITA FALLS ELECTRIC CO. v. CHANCELLOR & BRYAN. (No. 1764.)**

(Court of Civil Appeals of Texas. Amarillo. March 9, 1921. Rehearing Denied March 30, 1921.)

**I. Champerty and maintenance ⊕5(6)—Provision in contract prohibiting client from settling claim does not render contract void.**

A stipulation in a contract of employment of attorneys, to the effect that the client could not settle his claim without the attorneys' consent, did not render the contract void as against public policy.

**2. Attorney and client ⊕148(2) — Contract held not one for contingent fee, but for interest in case.**

A contract between attorney and client, "In order to secure the services as attorneys in the case of the death of my husband, J. D. K., * * * I hereby set over to said attorneys one-third of same against all parties," etc., did not provide for a contingent fee, but was an assignment of a one-third interest in the case,

rather than any amount or judgment which might be recovered by prosecuting the litigation.

**3. Attorney and client ⊕190(4) — Attorney, suing adverse party for making fraudulent settlement with client, need not allege facts showing liability.**

In an action against defendant to recover one-third of amount paid by defendant to client by attorneys, who had been assigned a one-third interest in a cause of action against defendant in order to secure their services, it was not necessary to plead and prove all the facts which would have been necessary in the original action to entitle their client to recover.

**4. Attorney and client ⊕190(4) — Adverse party compromising with client held shown to have notice of attorney's interest in cause of action.**

In an action by attorneys against opponent of their client, who fraudulently compromised with their client, evidence *held* to show that defendant had actual notice of plaintiffs' one-third interest in their client's cause of action.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit by Chancellor & Bryan against the Wichita Falls Electric Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Carrigan, Montgomery, Britain & Morgan, of Wichita Falls, and Templeton, Beall, Williams & Callaway, of Dallas, for appellant.
W. E. Fitzgerald, of Wichita Falls, and Chancellor & Bryan, of Bowie, for appellees.

HALL, J. This suit was instituted on October 15, 1919, by appellees, a firm of attorneys, against appellant, alleging, in substance: That appellant was a corporation, engaged in furnishing light, heat and power in Wichita Falls, Tex., and that it was so engaged on July 29, 1918. That on said date appellant's wires were heavily charged with electricity and came in contact with a certain iron building belonging to the Wichita Cotton Oil Company, and that the building became charged with electricity through the negligence of the defendant. That Jack D. Knightstep, employee of the Cotton Oil Company, while in the discharge of his duties, came in contact with said building and was killed. That he left surviving him a wife, viz. Mrs. Fannie Knightstep, who was the sole beneficiary and entitled to any damages which might accrue by reason of the negligent killing of her husband. That on August 21, 1919, J. W. Chancellor, one of the appellees, at the request of the brother-in-law of Mrs. Knightstep, called on her, and that Chancellor's firm was employed by her to prosecute a suit for damages because of the death of her husband. That the said Chancellor and Mrs. Knightstep entered into the following written contract:

"In order to secure the services as attorneys in the case of the death of my husband, J. D. Knightstep, by Chancellor & Bryan, of Bowie, Texas, I hereby set over to said attorneys one-third of same against all parties and especially the Wichita Falls Electric Company, as well as any industrial insurance. Said attorneys are to represent me in all matters of litigation or compromise, but no compromise shall be made without the written consent of both parties."

That appellees began negotiations for a settlement, and prepared a suit in the event settlement could not be effected. That appellant company, with notice of appellee's rights, fraudulently took the matter of settlement up with Mrs. Knightstep, and did, on or about September 30, 1919, pay her $5,000, in full settlement of said cause of action. The appellees prayed for judgment for $1,666.66, with interest and costs of suit. Appellant answered by general demurrer, general denial, and specially denied that appellees had any valid contract with Mrs. Knightstep; that if any contract existed it was void, in that it undertook to deprive Mrs. Knightstep of the right to compromise her claim without the consent of her attorneys. Appellant also denied knowledge or notice of any transfer of an interest in the claim or cause of action arising out of the death of Jack Knightstep, and alleged that it had notice only that plaintiffs claimed a contingent fee of one-third of the amount recovered. By cross-action it made Mrs. Knightstep a party to the suit, alleging that it made the settlement on the faith of certain representations made by her, and prayed that if appellees recovered that appellant recover over against her. When both sides closed in the introduction of testimony it was admitted that there were no controverted facts, and both appellant and appellees requested the court for a directed verdict in their favor respectively.

[1] Under the first two assignments it is complained that the court erred in overruling the general demurrer to appellee's petition, upon the ground that the contract was void as against public policy, because it contained the provision prohibiting the client from compromising with appellant without the consent of her attorneys. If it be admitted that the weight of authority in other jurisdictions supports the proposition we believe that the decisions of the higher courts in this state are to the contrary. After a review of many authorities, in addition to those cited in the briefs of counsel, and which we find are not without conflict and some confusion, we have concluded that not only the rule in this state, but the better reason is against appellant's contention. The question was considered in the case of Fort Worth & Denver City Railway Co. v. Carlock & Gillespie, 33 Tex. Civ. App. 202, 75 S. W. 931, in which Stephens, justice, said:

"The contract in question is further assailed by the proposition, but without assignment of error, for being against public policy, because of the clause prohibiting Wynn from settling the claim without the consent of appellees, in support of which Davis v. Weber, 66 Ark. 190, 49 S. W. 822, 45 L. R. A. 196, 74 Am. St. Rep. 81, is cited, that decision is placed upon the ground that such contracts 'foster and encourage litigation,' and are therefore against that public policy which favors the settlement of disputes 'without hindrance from disinterested parties.' To the same effect is Davis v. Chase (Ind. Sup.) 64 N. E. 88. It seems to us, however, that the reason for such holding is wanting in this instance, since appellees acquired by valid assignment a one-half interest in the cause of action itself. Railway Co. v. Miller, 53 S. W. 709; Railway v. Andrews, 67 S. W. 924. That assignment placed it in their power to prevent a settlement of the controversy, and it would hardly be against public policy, therefore, to merely add a stipulation which could do no more than that. In other words, where the law, as it does in this state, permits a transfer in part of a claim for damages to the attorney as compensation for his services, thus placing it in his power to prevent a compromise of the entire claim with the client, there seems little room for the contention that public policy is violated by a clause in the contract which can add nothing to this power."

[2] Under a different assignment appellant insists that the contract in the instant case is one for a contingent fee only. By referring to the contract quoted above, it will be observed that Mrs. Knightstep assigned to appellees a one-third interest in the case, rather than in any amount or judgment which might be recovered by prosecuting the litigation. In other words, it is an assignment of an interest in the subject-matter of the suit, rather than a promise to pay a fee contingent upon recovery. The instant case is similar to that of St. Louis, etc., Railway Co. v. Thomas, 167 S. W. 784, in which Judge Talbot said:

"Thomas having assigned one-half interest in his cause of action to interveners, and appellant having actual notice of such assignment, the settlement made by him with appellant, interveners not being parties to such settlement, affected only his one-half interest in the original cause of action, and interveners could prosecute the original suit to a conclusion for the one-half interest assigned to them. Thomas, under the circumstances, could only settle his one-half interest in said cause of action, and intervener's right of recovery was not limited to, and they were not compelled to accept, one-half of the amount for which Thomas settled. Whether Thomas had assigned to interveners one-half interest in his cause of action against appellant was an issue raised by the pleadings and evidence, and fairly submitted for the determination of the jury, who decided such issue favorable to interveners. The assignment by Thomas of one-half interest in his cause of action to interveners, and by which he deprived himself of the right to compromise and settle so

much thereof as was embraced in such assignment, is not, under the law of this state, void on the ground of public policy. Where such an assignment has been made the assignor and assignee each have a right to compromise and settle his interest in the cause of action, and, if the assignor subsequently attempts to settle the entire cause of action without the knowledge or consent of the assignee, the assignee is not bound by such settlement, if the party against whom the cause of action exists had notice of the assignment. * * * The instant case is unlike the case of Railway Co. v. Ginther, 96 Tex. 299, 72 S. W. 166, 167, cited by appellant, and is not ruled thereby. In Ginther's Case the instrument executed by him after reciting that he had employed Patterson & Butler to bring suit upon his cause of action against the Railway Company, declared that he had assigned to them one-third of whatever 'may be recovered in said suit or by way of compromise,' and the Supreme Court, in construing this contract, said: 'The instrument plainly expressed the intention to assign an interest in a cause of action of which a judgment or compromise was to be the measure, and the expression of this intention, in any language, was all that was required to make an assignment, as contradistinguished from a mere agreement to pay so much as a contingent fee.' In the case at bar Thomas not only agreed to pay interveners one-half of the amount recovered or collected on his claim, but assigned to them one-half interest in his cause of action against appellant. In such case we think the law is as above stated, and that the assignment is not invalid on the ground that it is against public policy."

The Supreme Court refused a writ of error in the Thomas Case.

[3] Appellant contends that, because appellees did not allege and prove all the necessary facts which would have entitled Mrs. Knightstep to recover in the original action, they are not entitled to recover one-third of the amount paid Mrs. Knightstep in settlement. In this connection appellants insist that there was no testimony whatever showing the circumstances surrounding the death of J. D. Knightstep, nor to his age, earning capacity, or any other fact which would enable the court to arrive at the amount of damages, if any, recoverable.

In the case of G., C. & S. F. Ry. Co. v. Stubbs, 166 S. W. 699, Judge Carl said:

"The contract not only assigned an interest in the claim for damages, but a one-half interest in any compromise, settlement, or recovery as well. As we construe the holdings of the courts, an attorney holding a contract such as the one in this case has three remedies, in the event the client settles the claim after notice to the party liable as to the existence of the contract, viz.: (1) He may proceed on the assigned cause for damages, in which event he would plead and prove the damages and liability therefor, and recover his part of such damages as might be established (Seither v. Marschall [Sup.] 147 S. W. 226); (2) he might sue the client for his share of the sum paid in settlement; or (3) he may recover his part of the sum paid the client without pleading and proving the damages. The last is the remedy selected in this case, and there appears to be ample authority for so doing. A case almost identical with the one under consideration came before the Supreme Court in G., H. & S. A. Ry. Co. v. Ginther, 96 Tex. 295, 72 S. W. 166, in which the judgment of the Court of Civil Appeals, 30 Tex. Civ. App. 161, 70 S. W. 96, was affirmed. That contract said: 'I agree to give and hereby assign to them one-third of whatever may be recovered in said suit by way of compromise.' Ginther settled, after the suit was filed, for $2,500, and his attorneys intervened and obtained judgment against the railway company for one-third of the amount paid Ginther. Judge Williams said: 'The instrument plainly expressed an intention to assign an interest in a cause of action, of which a judgment or compromise was to be the measure, and the expression of this intention, in any language, was all that was required to make an assignment, as contradistinguished from a mere agreement to pay so much as a contingent fee. Christmas v. Russell, 14 Wall. 84, 20 L. Ed. 762. While the contract may have left plaintiff free to compromise, it gave the assignees an interest in the claim which they had the right to have paid in the settlement. This right, when the defendant knew of its existence, could not be defeated by payment to the plaintiff. The position of defendant was that of any other person paying a debt to the original creditor, instead of an assignee whose rights were known'—citing Railway Co. v. Vaughan, 16 T. C. A. 403, 40 S. W. 1065. Another case very similar to this one came before the Austin Court of Appeals in G., C. & S. F. Railway Co. v. Eldredge, 35 Tex. Civ. App. 467, 80 S. W. 556. The court said: 'The appellee's cause of action was for 45 per cent. of the amount paid by the appellant to Eldredge. The contract upon which they base their cause of action transfers to them this percentage of the amount that might be received in compromise. Such being the case, they would be entitled to recover this amount without establishing the fact that the appellant would be and was liable to Eldredge on a cause of action for damages as alleged in the petition. The right to recover in a case of this kind for the part of the amount that the assignees were entitled to that was paid to the injured party in settlement is recognized in the case of G., H. & S. A. Ry. Co. v. Ginther, supra, and cases there cited.' See, also, G., C. & S. F. Ry. Co. v. Miller, 21 Tex. Civ. App. 609, 53 S. W. 709; T. C. L. Co. v. Holt, 144 S. W. 1029; Powell v. G. H. & S. A. Ry. Co., 78 S. W. 977; Texas Cent. Railway Co. v. Andrews, 28 Tex. Civ. App. 477, 67 S. W. 924. * * * From the authorities cited, it seems to be well settled that the assignee of an interest in a claim for damages may hold the party liable therefor responsible for his proportionate share of a settlement made with the client after notice. The assignment is to one-half of 'my claims, demands and causes of action and any compromise, settlement, judgment, or recovery.' Hansen did not expressly waive the right to himself settle the claim; but the railway company was put upon notice that appellant had and owned a one-half

interest in any compromise. So, when the railway company paid Hansen all of the money, they could not thereby force appellees to sue Hansen to recover the money. The company knew of appellees' interest, and, when it paid Hansen all of it, the rest was the railway's. Appellees were not required to plead and prove the damages to Hansen, as contended, but could sue for their part of the settlement made."

We believe Judge Carl correctly states the several remedies open to appellees in this case, even where fraud upon the part of the company in making the settlement is not alleged. It will be seen from the statement of the petition, supra, that appellees have alleged that the company fraudulently took the matter of settlement up with Mrs. Knightstep. They do not question the sufficiency of the amount of damages paid to Mrs. Knightstep, and it may be inferred from the nature of their action that appellees thought the $5,000 paid Mrs. Knightstep was a reasonable sum. Such being the nature of the case, under the authorities cited by Judge Carl in the Thomas Case, as well as the holding in that case, we think it was unnecessary for appellees to plead and prove all the facts which would have, in the original action, entitled Mrs. Knightstep to recover. There being no conflict in the testimony, we must presume that the court found that the settlement was fraudulently made, and that the sum awarded appellees was reasonable compensation.

[4] The only question remaining to be considered is that of notice. Upon that issue we think the facts are sufficient to bring this case within the rule announced in M., K. & T. Ry. Co. of Texas v. Wood, 152 S. W. 487. Appellees do not contend in this case that the constructive notice provided by V. S. C. S. art. 6833, has been given, but rely upon actual notice, which is said in the Wood Case to be a question of fact for the jury. Appellants did not ask that the question of notice be submitted to the jury. As said in the Wood Case:

"'Actual notice is said to exist where the party to be affected by it is proved to have had actual knowledge of the fact, where the knowledge is brought directly home to him by the evidence,' and the general doctrine of actual notice is also said to be that: 'Whatever puts a party upon an inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding.' * * * This court in the case last cited, states the rule to be 'that actual notice exists when knowledge is actually brought home to the party to be affected by it, or where he might, by the use of reasonable diligence, have informed himself of the existence of certain facts. Any fact or circumstance that is sufficient to put a prudent man upon inquiry and is of such a character that he might ascertain the fact by the exercise of proper diligence will be regarded as notice.'"

Appellee Chancellor testified as follows:

"I went to the Wichita Cotton Oil Mill and found a man there who I learned to be Mr. J. D. Scruggs. I introduced myself to him and told him why I was there. At any rate, he told me where Mrs. Knightstep lived, and invited me to ride in his car over there; that he would carry me there. He did so, and we drove up to the gate and saw two men on the porch. My recollection is Mr. Scruggs told me it was the superintendent of the oil mill, or some connection with the oil mill, and the claim agent of the electric company. Not desiring to intrude on them, we remained out in front until they left. They came out by the car, and Mr. Scruggs introduced me to the oil mill man, and the oil mill man introduced me to Mr. Ratliff, the claim agent, who sits over there. I told him what I was there for, and told him when I had seen the woman I would see him again, and we made an appointment to meet at the office of the Wichita Electric Company at 11 o'clock that morning. * * * I came back over to town and fulfilled my appointment with Mr. Ratliff, the claim agent. We talked something of the settlement, and we knew the age of Mr. Knightstep, and I had been informed of his earning capacity, but I did not have a mortality table, and asked Mr. Ratliff if he had one, and he said he did not. * * * In this conference at 11 o'clock in the office of the Wichita Electric Company, in Wichita Falls, I mentioned the contract of employment with her, and I told him I had been employed by her, but the terms of it, if it was mentioned, I do not recall it. On the 15th of August I went to see Mr. Ratliff, and he asked me what I wanted, and I told him I didn't want to be jewing around, but would settle for what was right, and told him I would recommend a settlement of $10,000, and he said he would have to refer those things to the general attorneys, and he got up out of his office and went into the offices of the general attorneys, I suppose—he said he was going there—and he came back and said they would not give $10,000; said they would not give more than $5,000. I told him I would not recommend a settlement of $5,000, but as a last effort to try to make a settlement I would recommend a settlement of $9,000, and he declined that, and I went away. * * * While in the conversation at Dallas with Mr. Ratliff I told him of the contingent interest I had in the case. I told him I had a one-third interest in the case. I would not be positive of the exact words I told him, but I know I conveyed to him the information that one-third of the case was mine."

After the conversation the appellees wrote Mr. Lawton (an officer of defendant company), the following letter, omitting the formal parts:

"We hereby call your attention again to the fact that we have a contract with Mrs. J. D. Knightstep, in regard to her claim against your company, due to the death of her husband. The terms of this contract were called to your attention by Mr. Chancellor, and were further explained later to your Mr. Ratliff. It was agreed in the said contract that neither party was to make a settlement without the written

consent of the other party. We have also an interest in said contract in the amount of a contingent fee of one-third of the amount recovered. You will, therefore, take due notice of this fact."

We think this evidence, when taken in connection with the agreement made by counsel, after both sides had closed in the introduction of evidence, to the effect that there were no questions to be submitted to the jury, justified the court in directing a verdict for appellees.

What is said above disposes of all the contentions presented under the several assignments of error.

The judgment is therefore affirmed.

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes